FULTZ *v.* WYCOFF.

25 321
137 621

PRACTICE.—The objection that a pleading is too indefinite or uncertain cannot be reached by demurrer. The proper course is to move to have it made more definite and certain.

DAMAGES.—PROFITS.—Suit by the keeper of a livery stable to recover damages for an injury done to two stallions of his own by the communication of a distemper to them by a horse of the defendant, which the plaintiff had been induced to receive into his stable by the defendant's representation that the horse had recovered from the distemper and could not communicate the disease to other horses. The court permitted the plaintiff to prove the profit he would probably have derived from the services of one of the stallions during the foaling season, but for his incapacity from the disease.

*Held,* that the evidence, though not admissible definitely to fix the measure of damages, was proper for the consideration of the jury as an aid in estimating them.

FALSE REPRESENTATION.—NEGLIGENCE.—The complaint alleged that the plaintiff was the keeper of a livery stable, and as such it was his business to keep horses to hire, and to feed and stable them for reward; that he kept in his stable two horses of his own of great value, to-wit, &c., for the purpose of foal-getting; that the defendant, well knowing these facts, on, &c., applied to the plaintiff to keep his, defendant's, horse in said stable, representing to the plaintiff that the horse had had the distemper, but had recovered therefrom and could not communicate the disease, &c.; that the plaintiff, being ignorant of the condition of the defendant's horse, and relying upon the defendant's representations, received the horse into his stable; that the defendant knew that the disease was then in the earlier stage, in which he knew it to be contagious.

*Held,* that the plaintiff had a right to rely upon these statements of the defendant, and that they did not show that the plaintiff had been guilty of negligence in receiving the horse into his stable.

*Held,* also, that the complaint was not bad for not alleging that the injury occurred without fault or negligence on the part of the plaintiff, or that the defendant did not in his business receive sick and diseased horses for keeping.

APPEAL from the *Bartholomew* Common Pleas.

RAY, J.— *Wycoff* brought suit against *Fultz.* The complaint sets forth that, on the 1st day of *February,* 1863, the plaintiff was the keeper of a livery stable in the town of *Edinburg, Johnson* county, and as such it was his business

to keep horses for hire, and to feed and stable horses for hire and reward, and that he there had and kept in his stable two stallions of great value, to-wit, one of the value of $500, and the other of the value of $400, which he kept for the purpose of foal-getting, and that the defendant, well knowing said facts, on or about the 1st day of *February*, 1863, applied to the plaintiff to procure the horse of the defendant to be kept by the plaintiff in his stable, and to induce the plaintiff to receive said horse and keep the same in his stable, he represented to the plaintiff that said horse had had the disease commonly called horse distemper, but had entirely recovered therefrom, and could not communicate said disease to other horses. The complaint then avers that said disease is contagious in the earlier stages thereof, as the defendant knew, and that in truth, and in fact, said horse of defendant then had said disease in the stage in which it was contagious, as defendant well knew, but the plaintiff, relying upon and believing the representations of the defendant aforesaid, and being ignorant of the fact that said horse was so diseased, received said horse into his livery stable, and that, in consequence thereof and by the exposure thereby made, the plaintiff's stallions contracted said disease from the defendant's horse; that said disease made said stallions sick from about the 1st day of *March*, 1863, and in consequence thereof said stallions were both rendered entirely unfit for service during the entire foal-getting season of the spring of 1863; and that on or about the 1st day of *May*, 1863, one of said stallions, to-wit, the one worth $500, died, wherefore the plaintiff says he is damaged, &c. A demurrer to this complaint was overruled. This is the first error assigned.

On the trial, the court permitted the appellee to testify, over the objection of the appellant, that "The prospect for the brown stallion mentioned in the complaint for a stand, during the season he was sick with the distemper, was good. The horse if properly handled could probably have tended, and would probably have received, from eighty to

one hundred mares during the foal-getting season, and I think I lost, by the loss of the season, about $250." Did the court err in admitting this testimony? This is the next question presented by the record.

The appellant, at the proper time, requested the court to give the following instructions to the jury: "If the jury should find that all the material allegations of the complaint are proved by a preponderance of evidence, then, in estimating the damages for the injury to the brown stallion mentioned in the complaint, you will have to find the difference in his value at the time he took the distemper and after he got over it; also the cost of curing him; also, what it would have cost the plaintiff to procure another stallion, as good and similar in all respects, for the time he was disabled from the sickness. And in estimating the damages you cannot take into consideration the probable profits the plaintiff would have made, if the horse had not become diseased, in making his stands through the season during which he was disabled from sickness." The court refused the instruction, and the appellant excepted. This is the third error assigned by the appellant.

The first objection urged to the sufficiency of the complaint is, that the horses alleged to have been injured are not described with sufficient certainty. This objection is not presented by the demurrer. The statute provides that, "Where the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defense is not apparent, the court may require the pleading to be made definite or certain by amendment." 2 G. & H., § 90, p. 112. It was held, in the case of Prindle v. Caruthers, 15 N. Y. R., 425, that such objections could not be presented by demurrer, but that a motion to make the faulty pleading more definite and certain was the correct practice.

Again, it is insisted that the averment that the plaintiff kept a livery stable does not exclude the idea that he received sick and diseased horses, and that an averment of the condition in which he accepted horses should have been

made. It does not seem to us that the allegation that the plaintiff kept horses for hire, and that his business was to feed and stable horses, will permit the inference that he kept a hospital for horses sick with contagious diseases.

The appellant objects that the complaint does not aver that the injury resulted without the fault or negligence of the plaintiff, and it is insisted that the averments show that it did result from such negligence. The averments are that the plaintiff, being ignorant of the condition of the horse, and relying upon and believing the representations of the defendant, received it; and that the defendant knew that the disease was contagious in its earlier stages, and that the defendant knew that his horse then had the disease in the stage in which it was contagious. We know of no rule that would require the keeper of a livery stable to inform himself so thoroughly in farriery as to enable him to determine, upon inspection, the exact stage any disease had reached in a horse brought to be kept in his stable, and whose owner assumed to state from his own knowledge the condition of the animal. This must certainly be the case where, as in the present instance, the danger of communicating the disease depended, as it is averred, upon the time which had elapsed since it had been contracted by the defendant's horse, a fact which must have been peculiarly within the knowledge of the defendant; and as it is charged that he knew that the danger depended upon this lapse of time, he must be held liable for the damage resulting from his false statement in regard to this fact. It seems to us that, upon the complaint, the plaintiff had a right to rely upon such statements, and hold the owner responsible for their truth. The defendant knew the risk to which he was exposing the plaintiff, and should have been careful not to mislead him by his representations. That the defendant is liable for the injury resulting to the plaintiff, is decided in *Rose* v. *Wallace*, 11 Ind. 112, which is a case exactly in point. The demurrer was correctly overruled.

The next error assigned requires us to consider what recovery could be had for the loss occasioned by the sickness of the brown stallion. The complaint avers that the animal was not kept as a livery horse, but that his services were rendered during a particular season of the year, and that the defendant well knew this fact when he placed his horse in the plaintiff's stable.· The entire expense of keeping and care during the year was to be compensated for by the earnings during the season, and therefore the expense of cure and the cost of his keeping, while sick, cannot measure the loss. Nor can the plaintiff be required "to procure another stallion as good and similar in all respects," for this would be unreasonable, and, indeed, impossible. No two animals are exactly alike, and many things are to be considered as making up the value of a stallion, which cannot all be found united in the same exact proportion in any two living creatures. Thus: size, symmetry, lineage, speed, health, color, age and disposition. And were such identity discovered, there must still exist in the minds of those who would be likely to avail themselves of the services of the animal, a conviction that all these things were duplicated in the substituted horse. The instructions asked by the defendant were therefore properly refused.

It is objected that the plaintiff was permitted to testify as to the probable value of the services of the horse during the season. We do not know what instructions were given to the jury to aid them in determining the measure of damages, but it seems to us the evidence offered was proper for the consideration of the jury in forming such estimate. In an action for libel, for publishing a statement in the *London Times* that a vessel was unseaworthy, the plaintiff was allowed to prove the average profits on such a voyage as was contemplated, and the jury were told that, with a view to estimate the damage, they might look to the plaintiff's business, and his general rate of profit, but that the evidence of profits was not regarded properly as a measure of

of damages. COLTMAN, J., said: "With respect to the damages, the jury must have some mode of estimating them, and they would not be in a condition to do so unless they knew something of the plaintiff's business and the general return from his voyages." *Ingram* v. *Lawson,* 6 Bing. N. C. 212. So in the present case, it was proper the jury should have information of the prospects for the season, not as the measure of damages, but as a guide to the exercise of that discretion, which must always, to a certain extent, rest with a jury. That the court properly instructed them upon this point, we do not doubt.

The judgment is affirmed, with costs and five per cent. damages.

*F. T. Hord,* for appellant.

*R. Hill* and *J. M. Rogers,* for appellee.