PHYSICIANS MUTUAL INSURANCE COMPANY *v.* JAMES P. SAVAGE, EXECUTOR OF THE ESTATE OF RUBY L. BROWN, DECEASED.

[No. 1-1272A104. Filed May 21, 1973. Rehearing denied June 26, 1973. Transfer denied October 16, 1973.]

*James E. Sullivan, Cox, Zwerner, Gambill & Sullivan,* of Terre Haute, *C. Wendell Martin, Bredell, Martin & McTurnan,* of Indianapolis, for appellant.

*Hansford C. Mann, Mann, Mann, Chaney, Johnson & Hicks,* of Terre Haute, for appellee.

ROBERTSON, P.J.—This action was brought by plaintiff-appellee, James P. Savage, as the executor of the Estate of Ruby L. Brown, to recover on a hospital expenses and accidental death insurance policy. The policy was issued to Mrs. Brown by the defendant-appellant, Physicians Mutual, on July 28, 1968, and by way of a rider attached thereto, accidental death benefits of $10,000 were extended for an additional premium. On January 5, 1971, at which time the policy and rider were in effect, Mrs. Brown was fatally injured while operating an automobile. A blood-alcohol test, taken shortly thereafter, revealed that Mrs. Brown had a .21 per cent alcohol in her blood stream at the time of the accident.

The hospital expenses policy issued to the decedent contained the following provision: "This policy does not cover any loss caused by or resulting from . . . (6) mental disorder, alcoholism or drug addiction." The foregoing provision was not included in the accidental death benefit rider which did, however, provide that the rider was: ". . . subject to the provisions of the policy to which it is attached that are not in conflict with the rider provisions."

Subsequent to Mrs. Brown's death attorney James Savage, as the executor of Mrs. Brown's estate, notified the insurance company of the death of its insured, and requested the necessary claim and proof of death forms. After various correspondence between the insurance company and Savage, John Hudson, an agent of Physicians Mutual, appeared at Savage's office on May 12, 1971. Hudson related to Savage that Mrs. Brown had a blood alcohol content of .21 per cent at the time of her death and that under the terms of a rider, which Hudson misrepresented was a part of Mrs. Brown's policy, coverage was excluded due to Mrs. Brown's intoxication. The rider which Hudson exhibited to Savage contained the following exclusion:

"Injury sustained in consequence of the Insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician."

Hudson offered to settle Savage's claim for $1,000 which was not accepted. The rider exhibited by Hudson was left in the possession of Savage and was subsequently introduced into evidence. At the time of his meeting with Hudson, Savage was unaware of any difference between the rider shown to him by Hudson and that which was actually attached to Mrs. Brown's policy.

Savage's complaint alleged, *inter alia,* that on behalf of the estate of Mrs. Brown he was entitled to recover the face value of the rider of $10,000 and that he was further entitled to exemplary damages for the insurance company's wrongful and willful denial of its contractual obligations. The case was tried to the court without a jury, which resulted in a judgment that Savage recover $10,108.17 from Physicians Mutual on the insurance contract and in addition thereto the further sum of $50,000 as exemplary damages. The trial court found, among other things, that:

". . . defendant through its agents and employees knowingly perpetrated a fraud upon the plaintiff in substituting another contract of insurance for the contract of insurance

entered into herein and claimed denial of insurance coverage for accidental death."

From its overruled motion to correct errors, Physicians Mutual groups the various assigned errors into four major arguments:

1. The court erred in holding that there was coverage under the policy rider;

2. the court should have granted a new trial because of unavoidable surprise to Physicians Mutual because of the absence in the complaint of allegation of fraud;

3. the decision of the trial court is contrary to law, and,

4. the court's award of punitive damages was excessive.

In addressing our decision Physicians Mutual's first argument, that of whether or not the "alcoholism" rider prevented recovery on the policy, we are of the opinion that Physicians argument is without merit. The words in an insurance policy should be given their plain and ordinary meaning whenever possible. *Sitzman* v. *National Life & Accident Ins. Co.* (1962), 133 Ind. App. 578, 182 N.E.2d 448, *O'Meara* v. *American States Insurance Company* (1971), 148 Ind. App. 563, 268 N.E.2d 109. Alcoholism is defined as "continued excessive use of alcoholic drinks": Webster's Seventh New Collegiate Dictionary. There is an absolute dearth of evidence in the record which would tend to show any pattern of alcoholism on the part of the decedent. Physicians Mutual's argument, that death obviously resulted from a state of intoxication, falls far short of a showing that the decedent continually and excessively used alcohol.

Physicians Mutual takes the position that it was denied a fair trial "Because of surprise when [Savage] offered evidence of alleged fraud on the part of [Hudson] in the absence of any allegation in the complaint of the alleged fraudulent conduct." We do not agree that surprise existed.

The fifth rhetorical paragraph of Savage's complaint alleged:

"The plaintiff is entitled to exemplary damages as (sic) result of defendant's wrongful and wilful denial of its contractual obligations."

The prayer for relief also asks for "exemplary damages as the court deems proper. . . ." Physicians Mutual specifically denied the above quoted paragraph in its first paragraph of answer. Savage filed a trial brief at the commencement of the trial which discussed fraud and exemplary damages. In addition, the following colloquy took place prior to the calling of any witnesses in the case, namely:

"MR. MANN: Plaintiff offers into evidence plaintiff's Exhibit No. 2.

MR. SULLIVAN: I am going to object to the introduction of Plaintiff's Exhibit No. 2 for the reason that it is outside the issues of this case and, further, for the reason that it has not been properly identified as to what it is nor is it stated the purpose for which it is being introduced into evidence.

MR. MANN: If the Court please, this is a statement of the condition of the Physicians Mutual Insurance Company as filed with the Insurance Commissioner of the State of Indiana as required by the statutory law of the State of Indiana and is also the most recent one filed, filed December 31, 1971, certified by the Insurance Commissioner of the State of Indiana.

THE COURT: *This would be then directed toward the exemplary damages request,* I assume. Well, I've got to look at it, Jim, but I am inclined to agree with you, at the present time at least, that this would not be admissible. (our emphasis)

MR. MANN: We will hook it up.

THE COURT: Hold it then until such time as it is tied together, how's that. Then you can make your offer at that time."[1]

We cannot say, as a matter of law, that Physicians Mutual was unaware of the impending quest for exemplary damages.

Physicians Mutual also argues that fraud was not plead in accordance with TR. 9 (B), which states:

---

1. The exhibit was subsequently admitted into evidence.

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be specifically averred. Malice, intent, knowledge, and other conditions of mind may be averred generally."

There are other authorities who point out that TR. 9(B) should be read in conjunction with TR. 8, which unmistakenly requires a "short and plain" statement of the claim. See: 1 Harvey, Indiana Practice 542; *Jerry Alderman Ford Sales, Inc.* v. *Bailey* (1972), 154 Ind. App. 632, 291 N.E.2d 92.

The Supreme Court recently held:

"We might note that certain cases from the Court of Appeals apparently state that the plaintiff is required to state in his complaint the theory upon which his claim is based. See, for instance, Cheathem v. City of Evansville (1972), [151] Ind. App. [181], 278 N.E.2d 602. Although a statement of the theory may be highly desirable, it is not required." *State* v. *Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604, at 606.

It would appear, therefore, that this court may have been requiring more in the way of specificity in pleading than contemplated by the rules. We, furthermore, strongly suspicion the cases referred to in the above quote to be those relied upon, in part, by Physicians Mutual in support of their argument under this allegation of error.

Accordingly, we are of the opinion that the rhetorical paragraph which mentions seeking exemplary damages complies with TR. 9(B), especially when considered in connection with the notice pleading concept of TR. 8.

Additionally, we do not detect in the record where Physicians Mutual did anything to protect itself from the alleged surprise by moving for a continuance, as contemplated under TR. 15(B).

Prior to the discussion of Physicians Mutual argument that the trial court's decision is contrary to law, it would be appropriate to note that in so determining we only consider the evidence most favorable to the appellee, together with all reasonable inferences which may be

drawn therefrom. *Pokraka* v. *Lummus Co.* (1951), 230 Ind. 523, 104 N.E.2d 669. Also, we recognize that fraud need not only be proved by positive evidence, but if facts and circumstances are present from which fraud can be inferred, the proof will be sufficient. *Jordanich* v. *Gerstbauer* (1972), 153 Ind. App. 416, 287 N.E.2d 784, and authorities cited therein.

The trial court's specific finding of fraud, as heretofore set out, would seem to bring this case under the holdings of *Hedworth* v. *Chapman, et al.* (1963), 135 Ind. App. 129, 192 N.E.2d 649, and *Voelkel* v. *Berry* (1966), 139 Ind. App. 267, 218 N.E.2d 924, which allows exemplary damages in actions based upon contract. This same specific finding of fraud would also distinguish the instant case from the holding of *Standard Land Corporation of Indiana* v. *Bogardus* (1972), 154 Ind. App. 283, 289 N.E.2d 803, which, in substance, did not allow exemplary damages where the court makes no finding of fraud.

Physicians Mutual correctly points out that fraud has five essential elements: representation, falsity, scienter, deception (reliance), and injury. See *Capitol Dodge, Inc.* v. *Haley* (1972), 154 Ind. App. 1, 288 N.E.2d 766. For all practical purposes, the representation and the falsity by Hudson are admitted, however, Physicians Mutual argues that the remaining elements were not proven. We disagree for the reason that the record reveals evidence from which the trier of fact could reasonably infer the existence of scienter, deception and injury.

Savage testified as to his efforts, which included investigation, interviews, and legal research, in pursuing payment in full on the policy. Such testimony was sufficient to prove injury.

Scienter, as in *Capitol Dodge, supra,* and *Jordanich, supra,* could be reasonably inferred from statements made recklessly. The trial court would have been justified in believing that Hudson had, or should have had, a superior knowledge of his company's forms and their applica-

bility to the decedent when he made his representations to Savage. Scienter and reliance are questions for the trier of fact. One of the holdings in *Capitol Dodge, supra,* relates:

> "We are not at liberty to substitute our assessment of the evidence. It is but to repeat a truism that the question of reliance is one of fact to be determined by the jury, and that upon appeal from a jury verdict this court will not weigh the evidence. Smart & Perry Ford Sales, Inc. v. Weaver (1971), [149] Ind. App. [693], 274 N.E.2d 718." 288 N.E.2d 769.

The same applies with equal force to a bench trial.

We cannot conclude that the judgment was contrary to either the law or the evidence.

The argument that the exemplary damages awarded in this case are excessive is predicated, in substance, upon a ratio of damages allowed and the face value of the policy as well as a failure of Savage to prove injuries amounting to fifty thousand dollars.

It must be remembered that the type of damage is not completely compensatory in character but serves to deter wrongdoing. See: *Murphy Auto Sales, Inc. et al.* v. *Coomer, et al.* (1953), 123 Ind. App. 709, 112 N.E.2d 589, *Jerry Alderman Ford Sales, supra.*

As a basis for the amount the court had before it the heretofore alluded to Statement of Condition filed by Physicians Mutual with the insurance commissioner. The statement disclosed, *inter alia,* Physicians Mutual's total assets in excess of $37,000,000; and total liabilities in excess of $28,000,000. We are of the opinion the amount was not excessive when considered in relation to the evidence available to the trial court.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 296 N.E.2d 165.