Douglas M. GRIMES, Victor Thornton, Martin S. Yuriga, and Mae Tyler, As Administratrix of the Estate of Glenn Tyler, Deceased, Appellants (Defendants Below),

v.

Ernest JONES, Appellee
(Plaintiff Below).

No. 04A03–8910–CV–457.

Court of Appeals of Indiana,
Third District.

March 13, 1991.

---

Dock McDowell, Jr., Gary, for Gary Community School Corp. and Mae Tyler, as Administratrix of the Estate of Glenn Tyler, Deceased.

Julian B. Allen, Gary, for Douglas M. Grimes, Victor Thornton and Martin S. Yuriga.

Charles H. Graddick, Gary, for Ernest Jones.

STATON, Judge.

The appellants appeal an adverse judgment for $400,000 in punitive damages, presenting twenty-three issues for our consideration. We address only the following issue, however, because our treatment of it merits reversal:

> Whether a judgment for only punitive damages may stand absent an award of compensatory or nominal damages.

In January of 1980, Ernest Jones was appointed Superintendent of the Gary Community School Corporation (GCSC). His contract was extended for four years in 1983. On December 18, 1986, the School Board voted not to renew Jones' contract, and on July 28, 1987, the Board voted to reassign him to a position as Special Assistant to the Board to serve out the term of his contract. Upon reassignment, he would receive the same salary and benefits as he did in his previous tenure as superintendent.

On July 30, 1987, Jones filed a Verified Complaint for Injunctive Relief and Damages against GCSC and various members of the School Board ("Board Members").

A preliminary injunction against the reassignment was granted on September 14, 1987, but a stay was later entered. In the interim, Jones amended his complaint to include a count for punitive damages and remove his request for an injunction. An appeal of the grant of a preliminary injunction was taken by the GCSC and this court continued the stay of the injunction, eventually dismissing the appeal as moot since Jones' contract had expired. *Gary Community School Corporation et al. v. Jones* (July 28, 1988), Ind.App., No. 04A03–8709–CV–277 [526 N.E.2d 752 (table)].

Prior to trial, the trial court entered summary judgment dismissing Jones' claim for compensatory damages and partially granted GCSC's motion for judgment on the pleadings dismissing GCSC.[1] The trial judge allowed the case to go to trial on the claim for punitive damages against the Board Members. The jury returned a verdict for Jones in the amount of $400,000 in punitive damages. Judgment was entered on the verdict, and the Board Members appeal.

The general rule is that a party must establish actual damages before he may recover punitive damages. *Indiana & Michigan Elec. Co. v. Terre Haute Indus., Inc.* (1987), Ind.App., 507 N.E.2d 588, 613, *transfer denied* 525 N.E.2d 1247. The granting of affirmative equitable relief will also support a punitive damage award. *Indiana and Michigan Elec. Co. v. Harlan* (1987), Ind.App., 504 N.E.2d 301, 307, *transfer denied; Dotlich v. Dotlich* (1985), Ind.App., 475 N.E.2d 331, 346, *transfer denied; Hedworth v. Chapman* (1963), 135 Ind.App. 129, 192 N.E.2d 649, 651. However, this court has indicated that the rule allowing punitive damages to be supported by affirmative equitable relief should be strictly construed. *Voelkel v. Berry* (1966), 139 Ind.App. 267, 218 N.E.2d 924, 926.

The actual damage requirement has elicited frustration from bench and bar, one commentator referring to it as a "teapot tempest." Dobbs, *Remedies* § 3.9 at 210 (1973). However, the proffered rationale

---

1. Jones did not appeal either of these determinations.

for the rule is persuasive: a court will not punish conduct, no matter how reprehensible, which in fact causes no legal injury. *Dicker v. Smith* (1974), 215 Kan. 212, 523 P.2d 371. This rationale holds true when the remedy sought is equitable:

> The reason for such a requirement is that it first insures that some legally protected interest has been invaded. It prevents the assessment of punitive damages against one who may have caused damage without legal injury. There is no reason why an award of equitable relief may not fulfill this same function, for in either case it is necessary first to show an invasion of some legally protected interest.

*Village of Peck v. Denison* (1969), 92 Idaho 747, 450 P.2d 310, 314–315.

Although somewhat circular, another reason given for the rule is that there is no separate cause of action for punitive damages; they are derivative of actual damages. *Broadacre Trailer Lodge, Inc. v. Johnson* (1982), Ind.App., 439 N.E.2d 684, 686, *transfer denied*. This is rooted in the notion that it is not the primary office of the civil law to punish; such is the province of criminal law. Tort law seeks to make the wronged party whole, and any deterrent or punitive effect which its remedies may work on the tortfeasor is more incidental than intentional. Thus although the civil law allows damages to be imposed for punishment and deterrence incident to damages imposed for invasion of a recognized legal right, to allow an action solely for purposes of punishment to be brought by a private individual would frustrate these purposes. It is often said that a litigant has no right to punitive damages, but that they are a mere "windfall" to the fortuitous recipient. *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 362.

Here, Jones argues that the trial court's grant of a temporary restraining order (TRO) and a preliminary injunction is the type of equitable relief which will support a jury's verdict for punitive damages absent an award of actual damages. The TRO and preliminary injunction in this case were granted by the trial court pursuant to Indiana Rules of Procedure, Trial Rule 65, which sets out provisional remedies of which a litigant may avail himself pending the outcome of the lawsuit to which he is a party. The TRO was granted on July 30, 1987 and expired ten days later pursuant to the rule. The preliminary injunction was granted on September 14, 1987, but was stayed by order of this court on September 16, 1987. The stay was continued by this court after a hearing upon a finding that Jones had an adequate remedy at law. The appeal of the grant of the injunction was finally dismissed as moot on July 28, 1988. Although in his original complaint Jones requested injunctive relief, his amended complaint removed that request.

█ None of the cases cited above allowing punitive damages upon the grant of an equitable remedy involved provisional remedies. In each, the equitable remedies were granted after a full trial. *See Harlan, supra,* (rescission); *Dotlich, supra,* (constructive trust); *Hedworth, supra,* (reformation). We therefore find those cases distinguishable. Provisional remedies do not have the sufficient final showing that a legally protected interest has been invaded to support an award of punitive damages. They merely involve a preliminary "freeze" of the status quo pending a determination by the trier of fact whether a legally protected interest has in fact been invaded.

█ Jones also argues that his receipt of monies deposited with the trial court clerk constituted actual damages which would support a punitive damage award. In the answer to Jones' complaint, GCSC asserted a counterclaim against Jones for $2,988.35 in unused vacation time which Jones had claimed but to which he allegedly was not entitled. Pursuant to this claim, GCSC did not give Jones the entire amount of his final paycheck, but tendered $2,916.61 to the court clerk pending the outcome of the counterclaim. The jury found against GCSC on its counterclaim, and the check was released to Jones. Jones argues that the release of the check constituted actual

damages which would support a punitive damage award. We disagree.

Clearly, the check was being held to ensure that Jones would be able to pay a judgment if GCSC succeeded on its counterclaim. Its release was not an award of "actual damages" or "affirmative relief" within the meaning of the actual damages rule, any more than the payment of his salary by GCSC constituted damages. The release of the check merely returned to him money which was rightfully his.

■ Jones finally argues that "there is ample basis for affirming this verdict for the reason the the jury's verdict on Appellant's Counter-claim was, indeed, a finding that the Appellee was still entitled to some form of compensation up to the very point of its decision." Appellee's Brief at 25. Whether the jury thought that Jones was entitled to compensation is irrelevant. The trial court dismissed Jones' count for compensatory damages, and Jones did not appeal that dismissal. The trial was only for punitive damages, and the verdict form specifically stated that Jones received a judgment for punitive damages. He cannot now claim that some of those damages were actually intended to be compensatory.

Since we find that Jones received no actual damages, the judgment solely for punitive damages cannot stand.

Reversed.

HOFFMAN, P.J., and SULLIVAN, J., concur.